```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
COVENTRY ENTERPRISES LLC, a Delaware
Limited Liability Company,

                    Plaintiff,            MEMORANDUM AND ORDER

        - against -                        14 Civ. 8727 (NRB)

SANOMEDICS INTERNATIONAL HOLDINGS, INC.,
a Nevada corporation; CLSS HOLDINGS, LLC,
a limited liability company of unknown
origin,

                    Defendants.
------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The Complaint in this action alleges that defendants breached a contract to sell certain securities to plaintiff. Defendants move to dismiss the Complaint, arguing that there was no breach of contract because plaintiff made a late payment and because the relevant provision of the contract was illusory. For the following reasons, the motion is denied.

## I. BACKGROUND

The following facts are drawn from the Complaint and are assumed to be true for the purposes of the motion to dismiss. See Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154 (2d Cir. 2006). We also consider the exhibits attached to

the Complaint, upon which plaintiff relies.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).[1]

This case centers on an agreement for the purchase of convertible debt securities having a principal value of $145,000.  The parties to the transaction, and to the case, are the issuer of the securities, defendant Sanomedics International Holdings, Inc. ("Sanomedics"); the seller, defendant CLSS Holdings, LLC ("CLSS"); and the buyer, plaintiff Coventry Enterprises LLC ("Coventry").  Compl. ¶¶ 9-11.

On September 10, 2014,[2] defendants agreed to a "Memorandum of Terms" proposed by Coventry.  Compl. ¶¶ 9-10 & Ex. 1.  Then, on September 11,[3] the three parties signed a "Debt Purchase Agreement" (the "DPA" or "Agreement").  Compl. ¶ 11 & Ex. 2.  By its terms, the DPA is an integrated agreement to be governed by New York law.  Compl. Ex. 2, ¶¶ 6.3, 6.7.

A main feature of the transaction as described in both the Memorandum of Terms and the subsequent DPA is that it was to take place in three "closings," with the second to take place within thirty days of the first and the third to take place

---

[1]  Citations to the record refer to the Complaint dated October 28, 2014 ("Compl."), and exhibits thereto; and the Memorandum of Law in Support of Defendants' Motion to Dismiss dated February 4, 2015 ("Defs.' Mem.").

[2]  Except as specified, all events described herein took place in the year 2014.

[3]  Although Paragraphs 11 and 23 of the Complaint states that the DPA was entered into on September 11, and the DPA itself is dated September 11, Paragraph 25 of the Complaint states that the parties entered into the DPA "on or around" September 11.  Defendants do not rely on any ambiguity that Paragraph 25 arguably creates.  We assume for present purposes that the DPA was agreed to on September 11.

within thirty days of the second.  Compl. ¶ 12; Compl. Ex. 1, at 1; Compl. Ex. 2, ¶ 3.  Paragraph 3 of the DPA describes the closing process as follows:

> The closing of the transactions contemplated by this Agreement (the "Closing") shall take place in three separate closings.  At the first closing, which shall occur upon the mutual execution of this Agreement, the Buyer [i.e., Coventry] shall purchase from the Seller [i.e., CLSS] $50,000 of the Assigned Portion [of a Sanomedics promissory note] and shall pay to the Seller the sum of[ ]$50,000 less $1,000 in legal fees.  At the second closing, which shall occur within 30 days of the first closing, and subject to market conditions, the Buyer shall purchase from the Seller another $50,000 of the Assigned Portion less $1K in legal fees.  At the third closing, which shall occur within 30 days of the second closing, and subject to market conditions, the Buyer shall purchase from the Seller another $45,000 of the Assigned Portion less $1K in legal fees.

Compl. Ex. 2, ¶ 3.

The first closing occurred on the next day, September 12. Compl. ¶ 12.[4]  That closing "went off without a hitch."  Id. ¶ 14.  Coventry paid CLSS on time, and received a $50,000 note from Sanomedics.  Id.  Sanomedics then honored Coventry's right to convert the note into stock.  Id.

At some point, it became apparent to all parties that Coventry would earn a massive profit by exercising its right to

---

[4]  Although paragraph 12 of the Complaint alleges merely that the first closing took place "on or around" September 12, the calculations elsewhere in the Complaint are premised on the assumption that the closing took place on September 12 itself.  However, Defendants state that the first closing took place on September 11.  See Defs.' Mem., fifth unnumbered page of text.  We assume that the first closing took place on September 12, but our conclusions would be unchanged if it had taken place on September 11.  See infra note 9.

convert the next Sanomedics note and selling the conversion shares to the public.  See Compl. ¶¶ 1, 17, 24.  So when Coventry wired $49,000 to CLSS on October 14 for the second closing, CLSS returned the money instead of causing Sanomedics to issue a second note to Coventry.  Id. ¶ 17.

Defendants claimed that they were not bound to consummate the second closing for two reasons.  First, defendants argued that Coventry's October 14 payment was too late because it was more than thirty days after the first closing.  Compl. ¶ 17.  Coventry disagreed, in part because the thirtieth day after the first closing, October 12, was a Sunday, and the thirty-first day, October 13, was the Columbus Day holiday.  Id.  Second, defendants argued that the phrase "subject to market conditions" in the DPA's Paragraph 3 rendered the parts of the DPA pertaining to the second and third closings illusory.  Id. ¶ 18.

On November 3, the parties not having resolved their differences, Coventry brought this action for breach of contract, alleging damages in excess of $500,000.  On February 4, 2015, defendants moved to dismiss the Complaint for failure to state a claim upon which relief can be granted.[5]  The motion was fully briefed on March 19, 2015.  Notwithstanding

---

[5]  On February 5, 2015, the Clerk of Court, via the Electronic Case Filing ("ECF") system, noted that the defendants' counsel had made a "FILING ERROR – DEFICIENT DOCKET ENTRY," and directed counsel "to RE-FILE Document 10 MOTION to Dismiss."  We disregard counsel's failure to comply with this instruction.

4

defendants' belated request for oral argument, we find oral argument of this motion unnecessary.[6]

## II. DISCUSSION

**A. Jurisdiction**

The Court has jurisdiction under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.[7]

**B. Standard of Review**

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See Krys v. Pigott, 749 F.3d 117, 128 (2d Cir. 2014). Nonetheless, plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

---

[6] Defendants requested oral argument in an April 3, 2015 letter, after briefing was complete. On April 22, 2015, the Court's law clerk called defendants' counsel to schedule a telephone conference in lieu of oral argument. Defendant's counsel replied that defendants would waive argument unless the Court desired to hear from the parties.

[7] In an April 1, 2015 Memorandum and Order, the Court sua sponte noted that the record failed to demonstrate that the parties were of diverse citizenship, and directed the parties to supplement the record accordingly. In response, on April 13, 2015, the parties filed an affidavit and two declarations. Because the record now supports the conclusion that the parties are diverse, we "deem the pleadings amended so as to properly allege diversity jurisdiction." Canedy v. Liberty Mut. Ins. Co., 126 F.3d 100, 103 (2d Cir. 1997).

Where the plaintiff relies on a written contract attached to the complaint, the court is "not obliged to accept the allegations of the complaint as to how to construe [the contract]." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). At the motion to dismiss stage, the court "should resolve any contractual ambiguities in favor of the plaintiff." Id. However, if provisions of the contract are unambiguous, the court interprets those provisions as a matter of law. See Provident Loan Soc'y of N.Y. v. 190 E. 72nd St. Corp., 78 A.D.3d 501, 502 (1st Dep't 2010).

**C. Defendants' Arguments**

Defendants argue that they were under no obligation to sell Sanomedics securities to Coventry at the second closing for two reasons: (1) because Coventry's payment came later than permitted under the DPA; and (2) because the phrase "subject to market conditions" phrases in the DPA's Paragraph 3 rendered the part of the contract pertaining to the second and third closings "illusory." Both arguments lack merit.

**1. The Untimeliness Argument**

Although Coventry's memorandum of law does not cite it, a New York statute governing the recurrent problem of contractual deadlines that fall on weekends and holidays totally undermines

6

defendants' position that Coventry's payment was untimely. Specifically, Section 25 of the General Construction Law provides, in relevant part:

> Where a contract by its terms . . . authorizes or requires the payment of money or the performance of a condition within or before or after a period of time computed from a certain day, and such period of time ends on a Saturday, Sunday or a public holiday, unless the contract expressly or impliedly indicates a different intent, such payment may be made or condition performed on the next succeeding business day . . . with the same force and effect as if made or performed in accordance with the terms of the contract.

N.Y. Gen'l Const. Law § 25(1). Therefore, a default rule of contractual interpretation in New York is that if a period of time for the payment of money or performance of a condition ends on a weekend day or public holiday, that period of time is extended until the next business day. See, e.g., Fishoff v. Coty Inc., 634 F.3d 647, 652-53 (2d Cir. 2011); Li v. Astoria Fed. Sav. & Loan Ass'n, 81 A.D.2d 857, 858 (2d Dep't 1981).

The Section 25 default rule applies to the DPA because it includes a New York choice-of-law clause and because we perceive nothing in it that indicates a different intent. Here, the first closing took place on September 12; the second closing was to take place within thirty days, but the thirtieth day was a Sunday and the thirty-first day was a public holiday.[8] Thus,

---

[8]  Columbus Day is defined as a public holiday in the General Construction Law.  N.Y. Gen'l Const. Law § 24.

7

Coventry's payment on the thirty-second day, October 14, was timely.[9]

Defendants characterize the second and third closings as "options to purchase," seeking to benefit from the rule that options expire after the time specified in the option. We do not think that the DPA is an option contract, but even if it were, Section 25 would nonetheless apply. The Second Circuit, the New York Court of Appeals, and the First Department have each applied the Section 25 rule to options. See Fishoff, 634 F.3d at 653; Hirsch v. Lindor Realty Corp., 63 N.Y.2d 878, 880 (1984); Joannides v. Assimacy, 216 A.D. 133 (1st Dep't 1926). As the Seventh Circuit has explained, applying the law of New York, the modern principle that "options are subject to the customary rules of contract interpretation" supports the application of Section 25 to options. Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1272 (7th Cir. 1996); see id. at 1271-73. Thus, even viewing the second closing as an option, Coventry retained the power to exercise that option on October 14. In sum, Coventry's payment was timely.[10]

---

[9] If defendants were correct that the first closing took place on September 11, then the thirtieth day would have been a Saturday, which would leave our conclusion unchanged.

[10] In light of the statutory ground on which we resolve this issue, we need not reach Coventry's argument that its October 14 payment was not a breach of contract because (1) the DPA did not contain a time-is-of-the-essence clause, (2) Coventry was not on notice that defendants construed time

8

## 2. The "Illusory Options" Argument

We find no greater merit in defendants' argument that, because Paragraph 3 of the DPA provides that the second and third closings will be "subject to market conditions" (a phrase which is not defined within the DPA), the terms of the DPA relating to the second and third closings were "illusory options."

A bilateral contract may be "illusory for lack of mutuality of obligation." Dorman v. Cohen, 66 A.D.2d 411, 415 (1st Dep't 1979); see Curtis Props. Corp. v. Greif Cos., 212 A.D.2d 259, 265 (1st Dep't 1995) ("Because the promises of both parties to a bilateral contract must be supported by consideration, the contract is unenforceable if the promise of either party is illusory." (citation omitted)).  However, New York "courts avoid an interpretation that renders a contract illusory and therefore unenforceable for lack of mutual obligation and prefer to enforce a bargain where the parties have demonstrated an intent to be contractually bound." Curtis Props., 212 A.D.2d at 265-66 (1st Dep't 1995) (citations omitted); see, e.g., Credit Suisse First Boston v. Utrecht-Am. Fin. Co., 80 A.D.3d 485, 488-89 (1st Dep't 2011).

---

as being of the essence, and (3) it was reasonable under the circumstances to tender payment on the next business day after the thirtieth day.

Defendants' argument is inconsistent with defendants' characterization of the second and third closings as options. Options are unilateral until exercised, see Jarecki v. Sung Moo Louie, 95 N.Y.2d 665, 668 (2001), and the doctrine of mutuality of obligation is not applicable to unilateral contracts, see Flemington Nat'l Bank & Trust Co. v. Domler Leasing Corp., 65 A.D.2d 29, 36 (1st Dep't 1978). Thus, the common feature of an option that it need not be exercised does not make it "illusory."

More importantly, we reject defendants' suggestion that the phrase "subject to market conditions" by itself renders a contract illusory. Conditions based on market events are common features of business contracts, which do not render them unenforceable. Further, to the extent that the phrase is ambiguous because the DPA does not define it, any ambiguity must be resolved at this stage in favor of Coventry, the party opposing the motion to dismiss.

## CONCLUSION

For the reasons stated herein, defendants' motion to dismiss is denied. Defendants shall answer the Complaint within 14 days of today's date and the parties shall submit a proposed scheduling order within 35 days of today's date.

Dated: New York, New York
July 23, 2015

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorney for Plaintiff**

Stanley C. Morris, Esq.
Corrigan & Morris LLP
201 Santa Monica Blvd., Suite 475
Los Angeles, CA 90401

**Attorney for Defendants**

D. Giacomo Vilella, Esq.
225 Broadway, Suite 2000
New York, NY 10007